United States District Court
Middle District of Pennsylvania

|  |  |
|---|---|
| BRANDON MUTA,<br><br>        Plaintiff,<br><br>    v.<br><br>DICKSON CITY BOROUGH,<br>CHIEF WILLIAM BILINSKI,<br>DET. THOMAS JOSEPH DAVIS and<br>MAYOR ROBERT MACCALLUM<br><br>        Defendants. | Docket No.: |

## Complaint

Officer Brandon Muta brings this action against Defendants Dickson City Borough (The Borough), Chief William Bilinski (Bilinski), Detective Thomas Joseph Davis (Davis) and Mayor Robert MacCallum (MacCallum) and states as follows:

### Summary of Civil Rights Case for 4th Amendment Malicious Prosecution, Due Process Violation, Municipal Liability and Violation of The Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301

1.      Plaintiff Brandon Muta is a Dickson City Borough police officer and active-duty United States Army staff Sargent with an impeccable service record. He has an associate's degree in criminal justice and a passion for law

1

enforcement. Officer Muta had a promising career and sterling reputation until his own police department, the mayor and police chief maliciously prosecuted and suspended him from the department *for two plus years* for allegedly "obstructing the administration of law."

2.     The Borough's two-year sham investigation and suspension of Officer Muta was absurd on its face given that all criminal charges against him were dismissed on August 18, 2022, a mere 21 days after Chief William Bilinski initiated them.

3.     The Borough's vindictive suspension of Officer Muta reached a tipping point when the Borough's own attorney, apparently recognizing the illegality her client's conduct, emailed Muta on July 10, 2024, stating, "I am going to do my best to close the investigation as soon as possible because, as far as I am concerned, it has been open too long."

4.     On July 24, 2024 Mayor MacCallum wrote to Officer Muta that the Borough finally concluded their investigation and found that he "committed no wrongdoing." MacCallum went on to request Officer Muta's return to work.

5.     But the stain on Officer Muta's reputation and career remains.

6.     Officer Muta brings this Civil Action to clear his name and recover damages for violation to the rights afforded him by the United States Constitution.

## The Parties

7.     Plaintiff Brandon Muta resides in Scranton, Lackawanna County, Pennsylvania, 18504.

8.     Dickson City Borough is a Pennsylvania borough with offices located at 901 Enterprise Street, Dickson City, 18519, that creates law enforcement policy and provides funding, training, prosecutorial administration, and other resources to Dickson City and Dickson City Police Department.

9.     Defendant Chief William Bilinski was at all relevant times the head law enforcement official in Dickson City. Chief Bilinski directly participated in Plaintiff's prosecution and, as the chief law enforcement officer, ratified all decision making and policy related thereto in conjunction with the Dickson City Mayor.  He was acting under color of state law at all relevant times. He is sued in his individual and official capacity.

10.     Defendant, Mayor Robert MacCallum, was at all relevant times a final policy making official in Dickson City and directly participated in unlawful adverse employment actions directed at Brandon Muta, including his investigation, suspension and continued harassment. He is sued in his

individual and official capacity

11.    Detective Thomas Joseph Davis is a detective in the Lackawanna County District Attorney's office and was at all relevant times acting under color of state law when he wrote and filed . Detective Davis is sued in his individual and official capacity.

12.    Officer Muta demands trial by jury on all issues triable by a jury.

## Jurisdiction and Venue

13.    This action arises under 42 U.S.C. § 1983.

14.    Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

15.    Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Lackawanna County, Pennsylvania.

## Facts

### Officer Muta Develops Confidential Informant Joseph Enslin

16.    On about March 8, 2022, Officer Muta told Officer John Wilson that he wanted to use Enslin as a confidential informant because Enslin could provide valuable information regarding drug trafficking and the whereabouts of dealers wanted for questioning or arrest. Around the same

4

time, Officer Muta also contacted drug task force officer, Sergeant Lewis Kline, and explained the same to him.

17.    On April 12, 2022, Officer Muta spoke with Blakely Police Department (BPD) drug task force Officer Brandon Walters and explained that Enslin, whom BPD recently arrested, wanted to work as a confidential informant (CI). Officers Muta and Walters then met in person with Enslin to discuss how he could help police investigate drug trafficking operations.

18.    Thus, the Borough knew that Enslin was cooperating with police.

19.    Despite Officer Muta's notice to his department that he was developing Enslin as a CI, another officer, John Wilson (Wilson), later told Officer Muta on approximately April 22, 2022 that he arrested a female drug user who offered to participate in a sting operation targeting Enslin whereby she would purchase drugs from him.

20.    Officer Muta told Wilson that his plan was counterproductive because Enslin could provide far more value to the department as a CI given his connections.  Officer did not discuss the matter further.

### Olyphant Borough Police Arrest Joseph Enslin

21.    Police from a neighboring borough, Oylphant, arrested Enslin on June 27, 2022 on an outstanding warrant for simple assault.

22.     In a highly unusual procedure, Dickson City Chief Bilinski allegedly traveled to the Oylphant Police Department and informally

"interviewed" Enslin without using a recording device or other method to preserve evidence.

23.    According to the affidavit of probable cause (APC) for Officer Muta's arrest, Bilinski told investigators on June 27, 2022, that Enslin voluntarily stated to Chief Bilinski that Officer Muta disclosed the identity of a confidential informant to protect Enslin from arrest[1]. But Chief Bilinski did not preserve this alleged conversation via writing or audio recording. This is because it never occurred.[2]

24.    Similarly, the affidavit states that, "On June 27, 2022, Detective Harold Zech and John Munley spoke to Joseph Enslin at the Processing Center. [Enslin] *provided a written statement* indicating he provided Officer Muta information on drug dealers and wanted individuals; in exchange officer Muta would tell Enslin who was recently arrested and cooperating with police." (Emphasis added). But once again Enslin's alleged written statement was never provided to Officer Muta or his criminal defense attorney. And neither Munley nor Zech provided a separate affidavit or signed the APC for Officer Muta's arrest. Upon information and belief, Detective Davis intentionally misrepresented what, if anything, Enslin allegedly stated because Dickson

---

[1] The affidavit does state or even intimate that Enslin told the Chief when or for what crime he was to be arrested such that he could credibly report that Officer Muta of tipping him off.
[2] Had Bilinski's conversation actually occurred there would be a record of it.

City Borough concluded that Officer Muta "committed no wrongdoing" after investigating the allegation for over two years.

### The Affidavit of Probable Cause is Facially Devoid of Facts Creating Probable Cause and Intentionally Omits and Misrepresents Material Information

25.    A month later, on July 28, 2022, Detective Thomas Joseph Davis authored and filed a criminal complaint against Officer Muta alleging that, "*on April 29, 2022*, Muta revealed the identity of a [female][3] confidential informant to the target of a drug investigation [Joseph Enslin]" and thereby obstructed the administration of law. But the affidavit does not attribute any statement to Enslin or the female confidential informant that even tangentially supports this very specific accusation regarding Officer Muta's alleged conduct on April 29. And neither do Enslin's phone records that are referenced in the affidavit, none of which are from the month of April 2022, much less the specific date of April 29, 2022. Indeed, of the 42 text messages recovered, none referenced the female informant or warned Enslin of anything.[4]

Nor does the APC identify what, if anything, the police had planned *to do* on April 29 that Officer Muta allegedly obstructed, or how they planned to do it.

---

[3] The female informant is not identified by name in the affidavit.

[4] If such text messages existed, Detective Davis would have included that key evidence in his affidavit. Indeed, Detective Davis included a quote of a text message in the affidavit, but it offers no support for the accusations against Officer Muta: "In one message on 06/16/2022 Muta tells Enslin, 'Walk to Convenient.'"

7

26.    In sum, any reasonably well-trained officer in the position of Detective Davis and Chief Bilinski would have known that their statements and affidavit failed to establish probable cause and that they should not have applied for it because doing so could create the unnecessary danger of an unlawful arrest.

### Damage to Officer Muta's Reputation

27.    On July 29, 2022, multiple news outlets reported that Officer Muta "identified a confidential informant to a suspected drug dealer" and was "arrested and released on $5,000 unsecured bail." One news site is titled "this week's corrupt cop stories." Public comments to the news articles, which remain visible today on the internet, illustrate the indelible stain on Officer Muta's career and reputation. For example, one comment reads, "so Muta is the real snitch."

### The Borough's Suspension and Two-Year Investigation of Officer Muta

28.    Chief Bilinski suspended Officer Muta the same day as Enslin's arrest, and although the APC states that "Chief Bilinksi stated he was in the process of typing a report on the incident," no report was ever prepared or provided to Officer Muta and his criminal defense attorney. Further, APC, which was filed a month after it was written, does not refer to any completed report by Chief Bilinski.

8

29.     As noted above, despite the prosecutor's dismissal of criminal charges 21 days after they were instituted, the Borough, Mayor MacCallum and Chief Bilinski, continued to "investigate" Officer Muta. The Borough ordered Officer Muta to attend an investigatory interview on September 27, 2022, with Mayor MacCallum and Borough Manager Cesare Forconi, during which Officer Muta unequivocally denied the allegations verbally and in writing. The Borough ignored Officer Muta's denial and continued his suspension indefinitely.

30.     Worse, when Officer Muta demanded that Borough provide him with a copy of his personnel file under 43 Pa. Stat. Ann. § 1322 and confirmation that he was no longer suspended, Mayor MacCallum, at the behest of Chief Bilinski, responded by writing Officer a letter on April 25, 2024, threatening him with the vague allegation that "the Borough has received information that [Joseph Enslin] is now present in the Borough of Dickson City and may become available to give testimony [against him]." Mayor MacCallum's threatening letter *expressly stated* that it was in response to Officer Muta's repeated written requests in March 2024 for his employee personnel file and for confirmation that he was no longer suspended. Thus, the Borough's intent to create a false and defamatory impression of Officer Muta will predictably continue.

### Officer Muta's Military Service

31.     On October 15, 2022, Officer Muta, who is a military reservist, accepted active-duty Orders from the United States Army. He has remained on active duty since that time.

32.     Officer Muta previously advised the Borough that his orders currently expire on December 31, 2026, after which he will have 90 days to apply for reemployment.[5] His Orders could end sooner if the Army terminates his assignment or if Officer Muta resigns from the military.

### The Borough and Chief Bilinski's hostility toward Officer Muta is Likely to Continue

33.     The Borough, at MacCallum and Bilinski's direction, has settled on a new form of retaliation and harassment against Officer Muta – Repeatedly contacting him and demanding that he express his feelings toward reemployment sooner than the expiration of his orders. In one email, the Borough's attorney questioned whether Officer Muta wanted to return to work because he "seemed angry."  In another, a Borough board member, Ceasar Forconi, told Muta that he needed to declare is intent to return work in February of 2024 "to be transparent." In this way, MacCallum and Bilinski are intentionally disregarding the 90-day notice requirement under USERRA

---

[5] A person [on military leave] shall, upon the completion of a period of service in the uniformed services, notify the employer of the person's intent to return to a position of employment by submitting an application for reemployment with the employer not later than 90 days *after the completion of the period of service.*  38 U.S.C.A. § 4312 (West)[Emphasis added].

that begins *after the completion of the period of [military] service* and are in its place creating an additional prerequisite for return to work, which they certainly know is unlawful. *See Torres v. Texas Dep't of Pub. Safety*, 597 U.S. 580, 582, (2022)("USERRA expressly 'supersedes any State law [policy or practice]... that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.'" § 4302(b)).

34.     This hostility is likely to continue because Chief Bilinski, who is both Officer Muta's direct supervisor and the former primary witness in Officer Muta's prosecution, has a motive to justify his initiation of criminal proceedings by continuing to threaten unjustified discipline against Officer Muta. In short, if Chief Bilinski concedes that no probable cause existed for Officer's arrest and prosecution (as he must, because they are not supportable), then Chief Bilinski is inculpating himself for a malicious prosecution claim. Stuck between a rock and a hard place, Chief Bilinski (and the Borough) simply dragged out a purported disciplinary investigation for more than two years, not imposing discipline because there is no basis for doing so, but also not clearing Officer Muta of

11

threatened discipline because doing so would give rise to liability for malicious prosecution.

### Legal Claims for Malicious Prosecution under Section 1983 in Violation of the 4th Amendment of the United States Constitution

### Plaintiff v. All Defendants

35.     The allegations above are realleged.

36.     The affidavit of probable cause for Officer Muta's arrest, even if true, (which it most certainly is not) is facially devoid of facts supporting probable cause. Neither of the criminal informants are alleged to have provided statements accusing Plaintiff of the specific crime alleged nor any conduct for that matter on the specific date alleged.

37.     Further, proof of the alleged statements, such as reports or recordings thereof, does not exist. Upon information and belief, the alleged criminal informant statements either did not occur or are grossly misrepresented because Dickson City determined that Officer Muta "committed no wrongdoing" after two years of investigation.

38.     Defendants instituted, caused, or procured[6] criminal proceedings against Plaintiff without probable cause and with malice, in violation of his constitutional rights; malice may be inferred by lack of probable cause.

---

[6] Blacks Law Dictionary defines "procure" inter alia, as "to cause a thing to be done; *to instigate; to contrive, bring about, effect, or cause, to persuade, induce…"* (emphasis added).

12

39.    The criminal proceedings were terminated in Plaintiff's favor.

40.    Defendants knew that the criminal charges against Plaintiff were unwarranted.

41.    As a direct and proximate result of the actions of Defendants, Plaintiff was falsely arrested in that he submitted to the Borough's authority, was arraigned and appeared in court against his will, expended monies including attorneys' fees in defense of the criminal charges against him, suffered irreparable harm to his reputation, had his property (gun and badge) removed and was suspended from his employment.

42.    Plaintiff was also deprived of his liberty.

43.    These actions of Defendants constitute malicious prosecution, in violation of Plaintiffs' Fourth and Fourteenth Amendment rights.

WHEREFORE, Officer Muta respectfully requests this

Honorable Court:

a.    Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiff;

b.    Award Officer Muta compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures,

13

loss of reputation, benefits, emotional distress and other

damages;

c.   Award reasonable costs and attorneys' fees;

d.   Award punitive damages; and

e.   Grant any other relief this Court deems just and proper

under the circumstances.

**Legal Claims for Violation of**
Uniformed Services Employment and Reemployment Rights Act (USERRA)
**38 U.S.C.A. § 4312**

**Plaintiff v. Robert MacCallum, William Bilinski and Dickson City Borough**

44.   The allegations above are realleged.

45.   A person [on military leave] shall, upon the completion of a period of service in the uniformed services, notify the employer of the person's intent to return to a position of employment by submitting an application for reemployment with the employer not later than 90 days *after the completion of the period of service.* 38 U.S.C.A. § 4312 (West)[Emphasis added].

46.   It is unlawful any employer to impose any additional requirement on an employee for return to work beyond the 90-day notice specified by § 4312. *See Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 441 (6th Cir. 2008)(Holding that a police department cannot

14

limit or delay reemployment by requiring officer to comply with its return-to-work process).

47.    The Borough, both directly and through its attorney, has repeatedly demanded that Plaintiff provide notice of his intent to return to work *before* the completion of his period of service. The Borough's conduct in creating a hostile environment via the threat of "new testimony" and criminal charges against Plaintiff coupled with their simultaneous demand that Plaintiff provide early notice of his return to work is a prima facie violation of USERRA.

48.    As a direct and proximate result of Defendant's intentional retaliation against Plaintiff, has suffered and will continue to suffer damages, including, but not limited to, back pay and benefits, emotional pain and distress, suffering, inconvenience, mental anguish, humiliation and embarrassment, loss of enjoyment of his job and his life, injury to reputation, injury to dignity and personal wellbeing, and other pecuniary and non-pecuniary losses.

### Legal Claims for Violation of Due Process under the 14th Amendment of the United States Constitution

**Plaintiff v. Robert MacCallum, William Bilinski and Dickson City Borough**

49.    The allegations above are realleged

50.    Plaintiff has a property interest in his chosen profession and reputation.

51.    The Defendants created and disseminated a false and defamatory impression of Plaintiff in the course of Plainitiff's two plus year suspension which has continued with Defendants' ratified threat to procure "new testimony" against Plaintiff in support of renewed criminal prosecution.

52.    The defendants continue to preclude Plaintiff from following his chosen profession free from unreasonable governmental interference.

53.    The Defendants have never retracted the false allegations set forth in the APC nor their April 25, 2024 written allegation that they were aware of new evidence purporting to support criminal charges against Plaintiff.

54.    Further, Plaintiff's suspension was based upon unspecified "misconduct," unrelated to a legitimate cause and Plaintiff never had a pre-deprivation opportunity to contest his suspension.

WHEREFORE, Officer Muta respectfully requests this

Honorable Court:

16

a.  Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiff;

b.  Award Officer Muta compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

c.  Award reasonable costs and attorneys' fees;

d.  Award punitive damages; and

e.  Grant any other relief this Court deems just and proper under the circumstances.

Date: August 17, 2024                    Respectfully submitted,


/s/ Joseph P. Guzzardo
Joseph P. Guzzardo
Guzzardo & Associates LLC
121 S. Broad Street, Ste. 1600
Philadelphia, PA 19107
Telephone: (205) 718-6691
jguzzardo@guzzardolaw.com

Johson and Webbert LLP
1 Bowdoin Mill Island #300
Topsham, ME 04086
Telephone: (207) 623-5110
jguzzardo@work.law

17

*Attorneys for Plaintiff*

18